IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01514–KMT

JODI M. BONSER,

      Plaintiff,

v.

WASTE CONNECTIONS OF COLORADO, INC.,

      Defendant.

---

## ORDER

---

This matter is before the court on "Defendant's Motion to Strike the Proffered Expert Testimony of Philip A. Stuff, M.D. and Mark Guilford," filed on January 31, 2020.  [("Motion"), Doc. No. 50].  Plaintiff has responded in opposition to the Motion, and Defendant has replied. [("Response"), Doc. No. 58; ("Reply"), Doc. No. 60.]

## BACKGROUND

Plaintiff was involved in a motor vehicle accident on March 27, 2015, where her Jeep Wrangler was struck by a 2014 Mack Truck owned by Defendant and driven by Defendant's employee, Stephen Vallejos.  [("Complaint"), Doc. No. 4 at 2 ¶¶ 6-13.]  Plaintiff claims she was injured in the accident, and demands damages for her bodily injury, including medical costs, non-economic damages, permanent physical impairment and disfigurement, and past and future lost wages.  [*Id.* at 2-3 ¶¶ 15-18.]

In connection with this litigation, Plaintiff retained Dr. Peter Weingarten to perform an independent medical examination and render an expert report. [Resp. 2.] Dr. Weingarten and his report were timely disclosed on June 3, 2019. [*Id.*] Dr. Weingarten first examined Plaintiff on May 20, 2019. [*Id.*] His report concludes with the opinion that the symptomatology she suffers, as outlined in the report, is "related to the MVA and permanent." [("Weingarten May 20, 2019 Report"), Mot. Ex. E at 6.] Dr. Weingarten's report does not recommend or address any future medical treatment for injuries related to the motor vehicle accident. [*See id.*] In addition, the expert disclosures with respect to Dr. Weingarten do not indicate that Dr. Weingarten was expected to provide any testimony about a necessity for future medical treatment. [*See* Mot. Ex. D at 1-3.]

The expert disclosure concerning Plaintiff's retained economist, Jeffrey Nehls, M.A., states that, in addition to providing his opinion about current economic losses, "Mr. Nehls will testify concerning Ms. Bonser's potential future economic losses resulting from the injuries and damages she has suffered consistent with his Economic Appraisal Report dated June 3, 2019." [*Id.* at 3.] Mr. Nehls's report, although reportedly attached to the original expert disclosures, was not provided to the court. Defendant characterizes Mr. Nehls's opinion testimony as relating only to Plaintiff's "claimed wage losses," not to any further medical treatment or procedures. [Mot. 5.]

Defendant filed its expert witness disclosures on July 22, 2019, disclosing retained medical expert, Dr. Tashof Bernton, who also performed an independent medical examination of

Plaintiff.  [Mot. Ex. F.]  Dr. Bernton prepared three disclosed reports, dated March 12, 2019,[1]

July 17, 2019, and July 19, 2019.  [("Bernton March 12, 2019 Report"), Mot. Ex. G; ("Bernton

July 17, 2019 Report"), Resp. Ex. 2; ("Bernton July 19, 2019 Report"), Resp. Ex. 3.]  In the

March 12, 2019 report, Dr. Bernton reviewed Plaintiff's medical history and summarized his

examination of Ms. Bonser.  [Bernton March 12, 2019 Rep. 1.]  Dr. Bernton's recommendation

for future treatment was "medical maintenance."  [*Id.* at 14.]  Dr. Bernton states, "I would concur

with the opinions of both [Plaintiff's] spine surgeon and with Dr. Jinkins, her orthopedic

surgeon, that further operative intervention or further injections are unlikely to provide further

benefit for the patient.  [*Id.*]

      Dr. Bernton's July 17, 2019 report was based on his review of 111 pages of additional

medical records, including a Neurology note from Dr. Hamid Mortazavi.  [Bernton July 17, 2019

Rep. 1.]  Dr. Bernton states, "[t]he patient said that she has seen an orthopedic doctor, but there

are no notes available, and they did not suggest surgery for her."  [*Id.*]  Dr. Bernton does not

mention Dr. Weingarten in this report, and he advised that "[r]eview of the additional records

does not change the assessments in my Independent Medical Examination."  [*Id.* at 2.]  Dr.

Bernton's opinion for future treatment, arising from injuries sustained in the 2015 motor vehicle

accident, was that Plaintiff's medication regime would need to be more firmly established, and

that she would require only "medication management" and possible physician supervision in the

future.  [*Id.*]

---

[1] Obviously, this report was created several months before Dr. Weingarten ever examined Plaintiff, or reviewed her medical records.

Neither Dr. Bernton's, nor Dr. Weingarten's, review of medical records contains a reference to any physician or other medical provider who recommended future surgery for Plaintiff as a result of injuries sustained in the motor vehicle accident.

In his July 19, 2019 report, Dr. Bernton states his intent to specifically address the "assessment of the Independent Medical Examination of Dr. Peter Weingarten dated May 20, 2019[.]" [Bernton July 19, 2019 Rep. 1.] Dr. Bernton does not address future medical treatment for Plaintiff, since Dr. Weingarten did not recommend any.

On August 12, 2019, Plaintiff informed the court and litigants that Dr. Weingarten had suffered "a severe medical emergency," and that, as a result, he would be unable to provide rebuttal opinions to Defendant's expert's opinions. [Doc. No. 44 at 1-2.] Plaintiff requested an extension to the rebuttal expert disclosure deadline to "allow sufficient time for the Plaintiff to provide rebuttal expert opinions." [*Id.* at 2.] The motion was granted that same day, and Dr. Philip A. Stull was disclosed by Plaintiff, with his report, on September 19, 2019. [Doc. No. 45; Resp. 3.] Dr. Stull rendered opinions about Plaintiff's potential future medical needs, including, for the first time from any medical expert, his opinion that Plaintiff would need additional intra-articular and cervical steroid injections, physical therapy, and "a cervical spine discectomy, nerve root decompression, and spinal fusion[.]" [Mot. Ex. I at 2.] Dr. Stull also states, "it does appear that her cervical spine and left shoulder conditions are permanent in nature." [*Id.* at 3.]

Additionally, on September 19, 2019, Plaintiff submitted her Second Supplemental Expert Disclosures, designating Mark L. Guilford, a specialist in finance and data analytics, as an expert witness, and providing his report. [Mot. Ex. J, Ex. K.] Mr. Guilford opines that the left shoulder intra-articular steroid injections, cervical spinal steroid injections from C5 – C7, and the

anterior cervical discectomy and fusion (ACDF) from C5 – C7, discussed by Dr. Stull, have a

billed value of $167,255.00.  [Mot. Ex. K at 1.]

      Both Dr. Bernton and Dr. Stull were deposed during the period from December 2019,

through January 2020.  [Resp. 3.]

## LEGAL STANDARD

      Federal Rule of Civil Procedure 26(a) requires a party to disclose the identity of any

expert witness it may use at trial.  Fed. R. Civ. P. 26(a)(2)(A).  A party must make this disclosure

"at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  As is the

case here, the court most often sets forth the time and sequence for disclosing experts in a

scheduling order with extensions of the dates occurring as modifications to the scheduling order.

[Doc. No. 23.]; *see* Fed. R. Civ. P. 16(b)(1); *Spring Creek Expl. & Prod. Co., LLC v. Hess

Bakken Inv. II, LLC*, No. 14-CV-00134-PAB-KMT, 2016 WL 1597529, at *2 (D. Colo. Apr. 21,

2016).  Additionally, Rule 37(c)(1) provides: "[i]f a party fails to provide information or identify

a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

      "Adherence to progression order deadlines is critical to achieving the primary goal of the

judiciary: 'to serve the just, speedy, and inexpensive determination of every action.'"  *Armstrong

v. I-Behavior Inc.*, No. 11-CV-03340-WJM-BNB, 2013 WL 2419794, at *2 (D. Colo. June 3,

2013) (*quoting* Fed. R. Civ. P. 1).  A trial court possesses the power to exclude exhibits and

witnesses not disclosed in compliance with its discovery and pretrial orders as an essential part

of a judge's control over the case. *Id.* (*quoting Boardman v. Nat'l Med. Enters.*, 106 F.3d 840, 843 (8th Cir. 1997)).

Rule 26(a) defines a rebuttal expert as one whose testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(C)(ii). Rebuttal expert reports are not the proper place for presenting new arguments. *See 1–800 Contacts, Inc. v. Lens. com, Inc.*, 755 F. Supp. 2d 1151, 1167 (D. Utah 2010), *rev. in part on other grounds*, 722 F.3d 1229 (10th Cir. 2013); *LaFlamme v. Safeway, Inc.*, No. 3:09-cv-00514-ECR-VPC, 2010 WL 3522378, *3 (D. Nev. Sep. 2, 2010); *Spring Creek,* 2016 WL 1597529, at *3. "[R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Spring Creek,* 2016 WL 1597529, at *3 (quoting *Int'l Bus. Machs. Corp. v. Fasco Indus., Inc.*, No. C–93–20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995)); *see also Boles v. United States*, No. 1:13CV489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015).

Even if a report superficially rebuts the opinion of another expert, true rebuttal experts cannot introduce evidence that should have been part of a plaintiff's original case-in-chief. *See Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *3 (N. D. Ill. Feb. 14, 2013) (observing that a proper rebuttal report is "limited to contradicting and rebutting evidence on the same subject matter identified by another party in its expert disclosures," and holding that "[a] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief"); *Smith v. Wal–Mart Stores, Inc.*, No. 2:11–cv–01520–MMD–RJJ, 2012 WL 4051925, at *1 (D. Nev. Sept. 13, 2012) (holding that a rebuttal expert disclosure is not intended to provide an extension of the deadline by which a party may deliver the lion's share of its

expert's information); *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (noting that expert rebuttal testimony is not an opportunity to cure oversights in a party's case-in-chief).

## ANALYSIS

Defendant contends that Dr. Stull's expert opinion testimony is improperly characterized as rebuttal, because it attempts to introduce new affirmative evidence on Plaintiff's damages related to future medical procedures.  [Mot. 1-2.]  Because Plaintiff made no attempt to substitute Dr. Stull as her affirmative expert when Dr. Weingarten became unavailable, Defendant contends that Dr. Stull's opinion, especially concerning his opinion that Plaintiff's injuries in the automobile accident at issue may require surgery in the future, should be stricken.  [*Id.* at 2.] Defendant argues that such opinion regarding future surgery goes to the heart of Plaintiff's claimed damages, and cannot, therefore, be mere rebuttal testimony.  [*Id.* at 9-11.]  For the same reasons, Defendant seeks to bar any testimony from Mr. Guilford, concerning the costs of the future surgery recommended by Dr. Stull.  [*Id.*]

Plaintiff, on the other hand, contends that Dr. Stull's testimony is in direct rebuttal to the testimony of Dr. Bernton, Defendant's affirmative witness, including Dr. Bernton's conclusions that Plaintiff will not need more than medication management in the future for injuries associated with the 2015 motor vehicle accident.  [Resp. 8-9.]

On August 13, 2018, the parties agreed upon, and the court approved, a three-part expert disclosure, requiring that Plaintiff first disclose her affirmative experts, on or before April 4, 2019, after which Defendant would then disclose both its own affirmative expert(s), and its rebuttal expert(s) to any of Plaintiff's disclosed affirmative experts, on or before May 23, 2019. [Doc. No 23.]  As the last step, it was agreed that, on May 23, 2019, Plaintiff would disclose her

rebuttal experts to any affirmative experts disclosed by Defendant.  [Doc. No. 22 at 2; Doc. No. 23 at 12.]  These dates changed over time, but the disclosure structure remained intact.  [*See* Doc. Nos. 38, 43, 45.]

Affirmative experts are those who are typically designated by the party who bears the burden of proof on an issue.  *Bautista v. MVT Servs., LLC,* No. 16-CV-01086-NYW, 2017 WL 2082925, at *10 (D. Colo. Mar. 20, 2017); *Anderson v. Seven Falls Co.*, No. 12–cv–01490–RM–CBS, 2013 WL 3771300, at *6 (July 18, 2013) (citing Advisory Comm. Notes to 1993 Amendments to Fed. R. Civ. P. 26).  Affirmative experts also serve to "contradict an expected and anticipated portion of the other party's case-in-chief."  *Spring Creek,* 2016 WL 1597529, at *2–3; *see Century Indem. Co. v. Marine Grp., LLC,* No. 3:08-CV-1375-AC, 2015 WL 5521986, at *2-3 (D. Or. Sept. 16, 2015); *Amos v. Makita U.S.A.,* No. 2:09–cv–01304–GMN–RJJ, 2011 WL 43092, at *2 (D. Nev. Jan. 6, 2011) (quoting *In re Apex Oil Co.,* 958 F.2d 243, 245 (8th Cir. 1992)).

Dr. Bernton's March 12, 2019 and July 17, 2019 reports, as well as Dr. Weingarten's May 20, 2019 report, are clearly affirmative in nature, involving the physicians' independent assessments of Plaintiff, and their review of her treatment by various providers over time.  Dr. Bernton's ability to render an opinion about Plaintiff's injuries from the automobile accident and her future medical needs, as expressed in his reports, is not dependent upon Plaintiff's calling Dr. Weingarten, Dr. Stull, or any treatment provider in her case-in-chief.

As noted, Dr. Bernton's third report, dated July 19, 2019, is clearly a rebuttal to Dr. Weingarten's May 20, 2019 report.  *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759

(8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.").

Obviously, Plaintiff would <u>not</u> be entitled to offer a "rebuttal" expert to her own designated expert, Dr. Weingarten.  If Plaintiff had wanted to designate a different affirmative expert when Dr. Weingarten was eliminated as a witness, Plaintiff would have needed to request a re-opening of her affirmative expert deadline, and, if permitted by the court, to designate a new expert, in lieu of Dr. Weingarten.  If the substitution were allowed, Defendant would then have been afforded an opportunity to designate Dr. Bernton (or any other qualified expert) to act as a rebuttal to the newly designated Dr. Weingarten replacement expert.  Plaintiff, however, did not elect to do this.  Instead, Plaintiff chose to disclose Dr. Stull's September 19, 2019 report, as a rebuttal to Defendant's affirmative disclosures.

Plaintiff's remaining claim is for negligence on the part of the driver of the garbage truck involved in the 2015 accident.[2]  [Compl. 5-6 ¶¶ 43-47.]  The elements of a negligence action under Colorado law consist of a legal duty, breach, causation, and damages.  *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015).  Obviously, a plaintiff's damages are an expected and anticipated – and in fact <u>required</u> – portion of that plaintiff's case-in-chief, on which he or she bears the burden of proof.  *Id.*

There is no question that Plaintiff would have had the right to have Dr. Weingarten prepare a rebuttal to Dr. Bernton's two affirmative expert reports.  There is also no reason why Plaintiff would necessarily be limited to designating Dr. Weingarten as her rebuttal expert.

---

[2] Claims One, Two, Three and Four were dismissed on June 12, 2019.  [Doc. No. 41.]  As a result, only Claim Five remains at issue in the case.  [*Id.*]

Indeed, Plaintiff was fully within her rights to timely disclose a rebuttal expert of her choosing to Dr. Bernton's affirmative expert opinions, irrespective of whether Dr. Weingarten was available to perform the task.  *See* Fed. R. Civ. P. 26(a)(2)(C)(ii) (permitting  the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness.); *Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-CV-7-WJM-KLM, 2013 WL 12426586, at *2 (D. Colo. Oct. 4, 2013) (a rebuttal expert's testimony is limited to rebutting or contradicting the expert testimony initially designated by the opposing party; rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.").

In this case, Dr. Stull was timely disclosed as a rebuttal expert.  Nevertheless, rebuttal expert reports are not the proper place for presenting new arguments.  Dr. Stull's opinion testimony is, therefore, limited to rebutting the affirmative opinions contained in Dr. Bernton's March 12, 2019 and July 17, 2019 reports.  As a rebuttal expert, Dr. Stull may not posit his own new theories, nor offer bolstering opinions supporting Plaintiff's other affirmative designated experts.  *See Bautista v. MVT Servs., LLC*, No. 16-CV-01086-NYW, 2017 WL 2082925, at *10 (D. Colo. Mar. 20, 2017) ("Individuals designated only as rebuttal experts may present limited testimony, may not testify as part of a party's case-in-chief, and cannot testify "unless and until" the testimony they were designated to rebut is given at trial.").  Accordingly, Dr. Stull's testimony is properly limited to presentation, only in Plaintiff's rebuttal case, if any.

Dr. Stull's opinion, that Plaintiff will require future surgery, is clearly prohibited new affirmative evidence.  Although the evidence marginally could be said to rebut Dr. Bernton's opinion that Plaintiff has reached maximum medical improvement, and that her future medical requirements are simply that her limitations be medically managed, Dr. Stull's opinions go well beyond rebuttal, and instead, present substantial, substantive evidence about Plaintiff's damages. These new damages were not properly and timely disclosed under Rule 26.  Damages are clearly part of Plaintiff's case-in-chief, as well as part of her burden of proof.  The fact that Plaintiff was compelled to introduce a completely new expert, Mark Guilford, proves that this information from Dr. Stull is affirmative.  Mr. Guilford does not rebut anything; rather, he adds to Plaintiff's damages the cost for future surgery, something never contemplated by any of the experts prior to Dr. Stull.[3]

Given that this information is affirmative, it was not timely disclosed.  However, the court could consider allowing Dr. Stull's affirmative opinion testimony at trial under Rule 37(c)(1), which permits such testimony if "the failure [to timely disclose] was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The court finds that the failure was not justified here.  There is no question that Plaintiff knew, before she disclosed Dr. Stull, that Dr. Weingarten was not going to be able to act as her affirmative expert witness.  Dr. Weingarten's medical condition would likely have been considered good cause to substitute Dr. Stull as an affirmative witness, and any prejudice could have been cured by allowing additional time for Dr.

---

[3] The court is not impressed by Plaintiff's "still treating" argument here.  Dr. Stull is not a treating medical provider, and apparently none of Plaintiff's treating physicians have recommended surgery.

Bernton, or any other of Defendant's experts, to supplement, amend, or simply prepare a new rebuttal.

There is little question, of course, that proceeding in this manner would have resulted in additional costs for Defendant, which very likely would have had to be addressed by the court, and might have resulted in Plaintiff being responsible for the extra costs associated with replacing Dr. Weingarten with Dr. Stull.  This may have been the rationale for Plaintiff's unwise decision to limit Dr. Stull to rebuttal.  But waiting to see if Defendant would raise the issue was not justified, and it has cost both sides, and the court, time and effort to now address.

Additionally, at this stage of the litigation, the court does not consider the failure to properly disclose Dr. Stull as an affirmative witness to be harmless.  The issue of costs is even greater now, since Defendant has been forced to file and litigate the instant Motion.  And, if the testimony from Dr. Stull were allowed, Defendant would likely incur substantial fees, associated with paying Dr. Bernton for additional time to review the reports and deposition of Dr. Stull, producing a new Defendant's rebuttal report, and deposing Dr. Bernton, as well as other related costs, including its own additional attorney's fees.   Further, given that trial in this case is set to commence on October 5, 2020, permitting Dr. Stull's testimony could jeopardize that trial date.

Therefore, finding that the failure to timely disclose Dr. Stull's affirmative expert opinion was neither substantially justified nor harmless, pursuant to Rule 37(c)(1), Plaintiff will not be allowed to use that opinion to supply evidence at trial.

Accordingly, it is

**ORDERED** that "Defendant's Motion to Strike the Proffered Expert Testimony of Philip A. Stuff, M.D. and Mark Guilford" [Doc. No. 50] is **GRANTED, in part, and DENIED, in part**.

1.      The Motion is granted, in part, with respect to the opinion testimony of Dr. Philip Stull, as follows:

a.      Dr. Stull's opinion testimony will be allowed in rebuttal to testimony elicited from Dr. Tashof Bernton, if any, consistent with Dr. Bernton's March 12, 2019 and July 17, 2019 affirmative reports.  To that extent, Dr. Stull may testify to his opinion that Plaintiff's current cervical spine and left upper extremity symptoms are directly related to the neck injury she sustained in the motor vehicle accident, as opposed to cervical degenerative changes.

b.      Dr. Stull is prohibited from providing opinion testimony about Plaintiff's future medical needs, including, but not limited to, his opinion that she may need a cervical spine discectomy, nerve root decompression, and spinal fusion.

2.      The Motion is granted, in full, with respect to the Expert Report and proposed testimony of Mark Guilford.  Mr. Guilford may not be called as a witness at trial.


Dated April 27, 2020.


BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge