IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01514–KMT


JODI M. BONSER,

      Plaintiff,

v.

WASTE CONNECTIONS OF COLORADO, INC.,

      Defendant.

---

## ORDER

---

This matter is before the court on "Defendant's Motion to Reconsider the January 28, 2021 Order in Light of the Change in Law Pronounced in *Delta Air Lines, Inc. v. Scholle* and *Gill v. Walz* Cases," filed on October 12, 2021.  [("Motion"), Doc. No. 106.]  Plaintiff has responded in opposition to the Motion.  [("Response"), Doc. No. 111.]  No reply brief was filed. A hearing was conducted on December 17, 2021, and ruling taken under advisement.  [*See* Doc. No. 113.]

## I. BACKGROUND

On or about March 27, 2015, at approximately 4:53 p.m., the driver of a Waste Connections 2014 Mack Truck, during the course and scope of his employment, wrongfully collided with Plaintiff who was driving her 2009 Jeep Wrangler.  ["(Amended Complaint"), Doc. No. 4 at ¶¶ 6, 8.]  Plaintiff had the right of way.  [*Id.* at ¶ 10.]  Plaintiff claims that as a result of

that collision, she suffered serious bodily injury and trauma, including injuries to her neck, back, and left shoulder, all resulting in permanent physical impairment and disfigurement. [*Id*. at ¶¶ 15, 18.] Plaintiff claims that, as a result of those injuries sustained in the collision, she has suffered economic losses and damages, including past and future medical expenses, past and future lost wages, and out of pocket expenses, as well as past and future non-economic damages, including pain and suffering, inconvenience, emotional distress, and impairment of quality of life. [*Id*. at ¶¶ 16-17.]

At the time of the collision, Plaintiff was employed and was, in fact, working. She sought treatment and benefits for injuries caused[1] by the vehicle collision on March 27, 2015 through the Workers' Compensation Act ("WCA"). *See* Colo. Rev. Stat. § 8-41-104. The workers compensation insurance carrier was Ace American, and its third party administrator was Sedgwick CMS. [Mot. ¶¶ 2-3.]

The workers' compensation insurer paid Plaintiff's adjusted medical bills in accordance with the fee schedule amounts set forth in Colo. Rev. Stat. § 8-42-101(3)(a)(1) and Workers' Compensation Rule of Procedures ("WRCP") 16-8 and 18. After adjustments, the workers'

---

[1] Establishing injury causation requires a showing of both general and specific causation. *Basanti v. Metcalf*, 35 F. Supp. 3d 1337, 1344 (D. Colo. 2014) (citing *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005)); *Perry v. Auto-Owners Ins. Co.,* No. 19-CV-3116-WJM-SKC, 2021 WL 4060633, at *3 (D. Colo. Sept. 7, 2021). "Specific causation" refers to whether a particular accident caused the specific injury at issue. *Id.* "General causation" refers to whether the accident in question is, in the abstract, capable of producing the type of injury suffered. *Id.* General causation may be established by epidemiological evidence, but an expert is not required to cite published studies "in order to reliably conclude that a particular object caused a particular illness." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1211 (10th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000)).

compensation insurer paid $74,293.71 to Plaintiff's medical treatment providers, in total

satisfaction of the medical bills and in compliance with Colorado law.  [Schedule of Payments to

Plaintiff, Mot. Ex. A.)  Indemnity wage loss benefits, including both temporary total disability

and permanent partial disability, were paid to Plaintiff in the amount of $74,779.32, in

accordance with Colo. Rev. Stat. §§ 8-42-102 through 8-42-106.  [Mot. ¶ 5.]

Ultimately, Plaintiff agreed to a final settlement on the workers' compensation claims

instead of continuing to receive benefits as needed.  [("WC Settlement Agreement"), Mot. Ex.

B.]  In addition to the sums listed above, Plaintiff agreed to accept an additional settlement

amount of $ 99,899.00 to resolve her claims against the workers compensation carrier

completely.  This settlement included retention of the paying carrier's right to subrogation.

[Mot. ¶ 7; *id.*]

The workers' compensation insurer thereafter did assert its subrogation claims against

Defendant, who then settled with the workers' compensation insurer on July 19, 2019.

[("Subrogation Settlement"), Mot. Ex. C.]  As part of the Subrogation Settlement, Ace American

assigned Defendant all of its rights and interests, including Ace American's subrogation

interests, stating: "Ace American hereby assigns and transfers to Waste Connections, without

recourse, all of Ace American's right, title, and interest in and to the claims or causes of action of

Bonser arising out of a compensable injury occurring on or about March 27, 2015, against any

and all third parties[.]"  [*Id.* at 1.]

During the course of this litigation, the parties sought court direction on whether

information about the workers' compensation payments was affected by the collateral source

rule.  [*See* Doc. No. 65.]  On January 28, 2021, this court issued an Order, holding that "evidence

of payments made in connection with Plaintiff's workers' compensation" to be inadmissible at trial under the collateral source rule, and discussing post-verdict set off for amounts paid by workers' compensation to providers and directly to Plaintiff.  [Doc. No. 70 at 6.]

On April 12, 2021, however, the Colorado Supreme Court issued rulings in two cases— *Delta Air Lines, Inc. v. Scholle*, 484 P.3d 695 (Colo. 2021), and *Gill v. Waltz*, 484 P.3d 691 (Colo. 2021)—which changed the landscape significantly in dealing with damages in automobile accident cases where payment of workers' compensation benefits are part of the equation.

Due to the imminent reassignment of this case to a different presiding judge for trial, this order is limited in scope to whether the court's January 28, 2021 Order should be set aside, and does not reach the myriad of other considerations now in limbo following *Scholle* and *Gill*, especially in light of the policy issues addressed in the dissents on those two cases.

## II.  ANALYSIS

The Workers' Compensation Act provides, in pertinent part:

(b) The payment of compensation pursuant to articles 40 to 47 of this title shall operate as and be an assignment of the cause of action against such other person . . . to the person, association, corporation, or insurance carrier liable for the payment of such compensation. Said [payer] shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee[.]

\* \* \*

(c) The right of subrogation provided by this section shall apply to and include all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee . . . [is] entitled under the provisions of said articles, . . ., or for which the employee's employer or insurance carrier is liable or has assumed liability.

Colo. Rev. Stat. § 8-41-203(1)(b)-(c).

4

When workers' compensation is the insurer, "an employee is entitled to have his employer furnish whatever medical treatment 'may reasonably be needed at the time of the injury' or thereafter 'to cure and relieve the employee from the effects of the injury.'"  Colo. Rev. Stat. § 8-42-101(1)(a) (emphasis added).  The WCA makes it "unlawful, void, and unenforceable as a debt for any [medical provider] to contract with, bill, or charge any party for services . . . in excess of [the WCA] fee schedule."  Colo. Rev. Stat. § 8-42-101(3)(a)(I); *accord Scholle*, 484 P.3d at 702.  This fee schedule compensation of medical providers becomes key in analyzing *Scholle* and *Gill*, because the injured employee (such as Plaintiff here) is provided one hundred percent of necessary medical care benefits under this system.  It is only the medical providers who are limited in what they can charge for that care; the care itself is fully provided.  In other words, Plaintiff receives the full benefit of "cure and relie[f] . . . from the effects of the injury" pursuant to Colo. Rev. Stat. § 8-42-101.

Once an employee invokes the protections of workers' compensation, an injured employee has several options with respect to damages she may claim against a third party tortfeasor who caused the injuries for which the workers' compensation insurance carrier became liable.  First, the employee may elect to receive workers' compensation benefits and choose not to sue the tortfeasor.  *Tate v. Indus. Claim Appeals Office of State of Colo.*, 815 P.2d 15, 17 (Colo. 1991).  This, however, does not preclude the workers' compensation insurance carrier who paid for the injury to the employee from suing the tortfeasor.[2]  *See Lebsack v. Rios*, No. 16-

---

[2] The scope of the subrogation right provided to insurers by the WCA includes "all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee ...[is] entitled" under Colo. Rev. Stat. § 8-41-203(1)(c).  The statute makes clear that "[t]he assigned and subrogated cause of action provided by this section ... [s]hall extend to all moneys collected from the third party causing the injury for all [e]conomic damages," and to whatever

cv-02356-RBJ, 2017 WL 5444568, at *2-3 (D. Colo. Nov. 14, 2017).  Under such a scenario, the

workers' compensation carrier steps into the shoes of the injured plaintiff with respect to

litigation against the tortfeasor.  *Am. Family Mut. Ins. Co. v. DeWitt,* 218 P.3d 318, 323 (Colo.

2009).

Alternatively, the employee may elect to receive workers' compensation benefits and

then directly sue the tortfeasor for damages in excess of the amount of compensation benefits for

which the insurer would be liable under the workers' compensation provisions.  In that

circumstance, the workers' compensation insurer – who has paid for medical and other services

covered by the workers' compensation system – becomes subrogated to the employee's rights

against the tortfeasor.  Both the employee and the insurer have claims against the tortfeasor, but

the insurer is limited in its claim to the maximum amount in the workers' compensation fee

schedule.  *Id.*

In *Scholle*, the Colorado Supreme Court acknowledged that the "shared right to pursue a

third-party tortfeasor for compensation established by [the WCA's] subrogation scheme is

significantly different from the treatment of [a workers' compensation carrier's] subrogation

rights in the traditional insurance context."  484 P.3d at 700.  The *Scholle* court held:

> Because a workers' compensation insurer pursuing or settling a subrogation claim
> is standing in the shoes of the employee with regard to the claim, when an insurer
> settles the subrogation claim, **it is in fact settling the employee's claim**. . . .
> [O]nce a subrogated insurer has resolved the claim, either through litigation or
> settlement, the insured is no longer entitled to recover the amount she received
> through her insurer from the responsible party.

---

expenses the insurer paid in disfigurement damages.  Colo. Rev. Stat. § 8-41-203(1)(d)(I);
*accord Scholle*, 484 P.3d at 700.

*Id.* at 700–01 (emphasis added) (internal citations, alterations, and quotation marks omitted).

The *Scholle* court made clear that "[b]ecause the injured employee need not present evidence of

either billed or paid medical expenses in the absence of a viable claim for such expenses, *the*

*collateral source rule is not implicated under these circumstances*." *Id.* at 697 (emphasis added).

To the extent that the workers' compensation insurer settles the employee's claims, that

settlement "extinguishes an employee's claims to the extent they are co-extensive with that

subrogated claim." *Id.* at 701.

Nonetheless, while an injured employee's claim to recover for medical expenses is

extinguished when the workers' compensation carrier resolves its subrogation claim with the

tortfeasor, even after resolution of a subrogation claim, an injured employee may pursue

"noneconomic damages or any economic damages not fully covered by workers' compensation

such as lost wages, physical impairment, disfigurement and noncovered medical services." *Id.* at

702; *Gill*, 484 P.3d at 691 (explaining that "[o]ur conclusions here and in *Scholle* in no way limit

an injured employee's right to pursue economic damages not fully covered by workers'

compensation such as lost wages, physical impairment, or non-covered medical services," and

noting that "an injured employee can also pursue any noneconomic damages").

Here, the parties do not dispute that the past medical expenses incurred to provide

treatment and care to Plaintiff for her injuries arising from the motor vehicle accident on March

27, 2015 are subject to the holdings in *Scholle* and *Gill*.[3]  Therefore, without question, Plaintiff's

---

[3] Once invoked, the workers' compensation insurance must "furnish medical, surgical, dental, nursing, and hospital treatment; medical, hospital, and surgical supplies; crutches; apparatus; and guardian ad litem or conservator services as may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury.  Colo. Rev. Stat. Ann. § 8-42-101(1)(a)

7

claims for past medical expenses arising out of her injuries have been extinguished by her

settlement with the workers' compensation carrier, as well as the successful assertion of

subrogation claims by workers' compensation against the Defendant tortfeasor here.  Thus, the

application of the collateral source rule to these damages is now in error.  However, even this

limited analysis cannot end here.

In this case, the parties anticipated that Plaintiff might need future care "during her

disability" to completely "cure and relieve" her "from the effects of the injury," as required by

the statute.[4]  The parties, who apparently began to "have disputes regarding the amount of

Workers' Compensation Benefits, if any, to which [the workers' compensation carrier] may be

entitled[,]" decided to "FOREVER settle this matter" through an additional lump sum payment.

[WC Settlement Agreement 1.]  Upon this payment, Plaintiff agreed to waive and forever give

up the right to claim compensation and benefits under the workers' compensation insurance plan

(which could have been payable for her entire life) to cure and relieve her from the effects of the

injuries arising from the March 27, 2015 accident.  Pursuant to the terms of the WC Settlement

Agreement, Plaintiff has agreed to:

> [R]eject[], waive[], and forever give[] up **the right to claim all compensation and benefits to which Claimant might be entitled for each injury or occupational disease claimed here**, including but not limited to the following, unless specifically provided otherwise in paragraph 9A of this agreement:
>
> a. Temporary total and temporary partial disability benefits to compensate Claimant for time missed from work; and

---

[4] The parties agreed that the injuries included her "finger, cervical and thoracic spine, left shoulder, headaches, and psychological [but also included] other disabilities, impairments and conditions that may be the result of these injuries or diseases."  [WC Settlement Agreement ¶ 1.]

    b. Permanent total disability benefits payable to Claimant for life if Claimant is totally incapable of earning any wages; and

    c.  Permanent impairment (also known as vocational impairment, medical impairment or permanent partial disability) benefits, payable up a maximum amount of $174,938.15; and

    d. A lump sum payment of up to $87,470.18 against an award of permanent impairment or permanent total disability; and

    e. Vocational rehabilitation benefits, including job training, income maintenance or any other benefits payable as vocational rehabilitation; and

    f. Benefits of up to $10,037.89 for disfigurement, scarring, discoloration, and/or a limp; and

    g. All penalties, interest, costs, and attorneys' fees up to the date this settlement is approved by the Division. The parties do not waive the right to seek post-approval penalties should either side fail to comply with the terms of the approved settlement agreement.

    h. **Medical, surgical, hospital, and all other health care benefits, including chiropractic care and mileage reimbursement incurred after the date of the approval of this settlement agreement** by the Division of Workers' Compensation or by an Administrative Law Judge from the Office of Administrative Courts.

[*Id.* at 1-2 ¶ 3 (emphasis added).]

The workers' compensation insurance carrier <u>paid for</u> this resolution with Plaintiff, just as it would have paid for medical providers to treat Plaintiff if the treatment was otherwise deemed to be a covered benefit.  The court finds that, in light of *Scholle* and *Gill*, there is no reason to distinguish between past and future medical expenses when considering Plaintiff's claims here.  "[T]he insurer's subrogation right applies to all medical benefits and expenses that the employee is **entitled to** under the WCA." *Scholle*, 484 P.3d at 700 (emphasis added).  The subrogation right, therefore, covers the employee's "claim to compensation for all medical treatment that was reasonably needed to relieve h[er] from the effects of h[er] on-the-job injury

9

and that [the insurer] paid for." *Id.* at 702*; Gill*, 484 P.3d at 694.  Upon the workers'

compensation insurer's settlement of its subrogation claim with Defendant, Plaintiff's claims, if

any, for future medical expenses were thus extinguished.  Since these claims are extinguished,

the collateral source rule is, likewise, inapplicable.  *See Scholle*, 484 P.3d at 702 ("[T]here is no

separate claim for the difference between amounts billed and amounts paid that can be decoupled

from the underlying claim for recovery of medical expenses.")

This court's January 28, 2021 Order acknowledged that "evidence of payments made in

connection with Plaintiff's worker's compensation claim is inadmissible under Colorado law."

[Doc. No. 70 at 3.]  This remains the case, but not due to the collateral source rule.  Rather, the

evidence will be inadmissible, because Plaintiff's claims to compensation for these past and

future medical expenses have been extinguished by virtue of the settlement of the subrogation

claim of the WC insurance carrier.  Therefore, the January 28, 2021 Order is no longer a correct

application of the law.

Accordingly, it is

**ORDERED** that "Defendant's Motion to Reconsider the January 28, 2021 Order in Light

of the Change in Law Pronounced in *Delta Air Lines, Inc. v. Scholle* and *Gill v. Walz* Cases"

[Doc. No. 106] is **GRANTED**.  It is further

ORDERED that the court's previous Order of January 28, 2021 [Doc. No 70] is

VACATED.  It is further

ORDERED that the "Plaintiff's Motion *in Limine* to Preclude the Defendant from

Referencing or Producing Evidence Relating to Any Collateral Source" [Doc. No. 65] is

DENIED as MOOT.

Dated January 31, 2022.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

11